UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MIRROR IMAGING, LLC,  §<br>§<br>*Plaintiff*,  §<br>§<br>v.  §<br>§<br>VIEWPOINTE ARCHIVE SERVICES  §<br>LLC; and VIEWPOINTE CLEARING,  §<br>SETTLEMENT & ASSOCIATION  §<br>SERVICES LLC,  §<br>§<br>*Defendants*.  § | Civil Action No. 3:22-CV-2857-X |

**MEMORANDUM OPINION AND ORDER**

Defendants, Viewpointe Archive Services and Viewpointe Clearing, Settlement & Association Services LLC (collectively, "Viewpointe"), filed a motion to dismiss [Doc. 17] Mirror Imaging's complaint due to improper venue. Mirror Imaging responds that venue is proper, but alternatively seeks either venue discovery or a transfer to federal court for the District of Delaware. [Doc. 22]. For the reasons below, the Court **DENIES** Viewpointe's request to dismiss, **DENIES** Mirror Imaging's request for venue discovery, and **TRANSFERS** this case to federal court for the District of Delaware.

Viewpointe argues that Mirror Imaging's complaint should be dismissed for improper venue. Venue is proper only "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular

1

and established place of business."[1]  Mirror Imaging does not contest Viewpointe's residence, but instead it argues that Viewpointe has a regular and established place of business in the district.  To have a regular and established place of business in the district "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."[2]

Mirror Imaging makes its argument by listing facts regarding Viewpointe's relationship with a company called Kendryl.[3]  It claims that the facts surrounding the Viewpointe/Kendryl relationship are identical to a "brick-and-mortar scenario whereby a defendant: (i) leases an office building in downtown Dallas; (ii) stores billions of documents in its leased office space; (iii) restricts physical access to those documents to only its clients; (iv) generates substantial profits from the data storage and access services; and (v) retains employees to routinely upgrade and maintain the data storage system."[4]  To make this connection, Mirror Imaging points to *In re Google*, 949 F.3d 1338, 1343 (Fed. Cir. 2020), which says, "leased shelf space or rack space can serve as a 'place' under the statute."  However, as Viewpointe points out, "unlike Google, Viewpointe does not own or lease any portion of Kyndryl's data

---

[1] 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017).

[2] *In re Cray*, 871 F.3d at 1360.

[3] Mirror Imaging alleges the following facts about Viewpointe and Kendry's relationship: "(i) Viewpointe admits to contracting with Kendryl to locate its infringing systems and data within this District; (ii) Viewpointe admits that its employees carry out meaningful and regular operations at the Kendryl Dallas data center; (iii) Viewpointe admits to controlling the software installed on the servers located at the Kendryl Dallas data center; and (iv) Viewpointe admits that the office equipment used by its employees in this District belong to Viewpointe."  Doc. 25 at 6.

[4] Doc. 25 at 6.

center."[5]  Instead, Kyndryl, as alleged, exclusively owns and operates the data center while Viewpointe contracts with it to provide this hosting service.[6]  Further, "only two (2) Viewpointe employees [] have badge access to the server floor of Kyndryl's data center, and they must do so in compliance with Kyndryl's security protocols."[7]  In sum, the present facts are distinguishable from *In re Google*.

Mirror Imaging made alternative requests to avoid dismissal: either transferring to the District of Delaware or obtaining venue discovery.

Mirror Imaging does not provide the Court any reason to believe that venue discovery would provide any facts to rebut Viewpointe's declaration and documentary evidence which demonstrate that Viewpointe does not maintain a place of business in the Northern District of Texas.  Devoid of compelling reasons to doubt the veracity of Viewpointe's demonstration that it does not maintain a place of business in this district, the Court will not provide a permit for a fishing expedition.  The Court **DENIES** the motion for venue discovery.

Mirror Imaging requests in the alternative to transfer this case to the District of Delaware.  Federal venue rules permit a district court to transfer any civil action to any other district or division where it might have been brought "[f]or the convenience of parties and witnesses [or] in the interest of justice."[8]  However, in light

---

[5] Doc. 26 at 5 (cleaned up).

[6] Doc. 17-1 at 4.

[7] *Id.*

[8] 28 U.S.C. § 1404(a).

of *Atlantic Marine*[9] and since both parties don't object to transfer, the Court does not need to conduct an analysis of the Section 1404 public and private factors.[10] The Court therefore **TRANSFERS** the case to the District of Delaware.

**IT IS SO ORDERED** this 17th day of August, 2023.

                                              _____
                                              BRANTLEY STARR
                                              UNITED STATES DISTRICT JUDGE

---

[9] *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Of Texas*, 571 U.S. 49, 55 (2013).

[10] "Plaintiff stipulates that transfer to Delaware is the better and more reasonable alternative to dismissal." Doc. 25 at 10. "Viewpointe respectfully requests that the Court dismiss the Complaint because venue is improper, or transfer this case to the District of Delaware." Doc. 17 at 25.